IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JAMAR B. PERRY, | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-1560 |
| | ) | Judge Gary L. Lancaster/ |
| DAVID DIGUGLIELMO; THE DISTRICT | ) | Magistrate Judge Amy Reynolds Hay |
| ATTORNEY OF THE COUNTY OF | ) | |
| BEAVER; THE ATTORNEY GENERAL | ) | |
| OF THE STATE OF PENNSYLVANIA, | ) | |
| Respondents | ) | |

REPORT AND RECOMMENDATION


RECOMMENDATION

It is respectfully recommended that the petition filed pursuant to 28 U.S.C. § 2254 be

dismissed and that a certificate of appealability be denied.

REPORT

Jamar Blaine Perry (Petitioner), a state prisoner, filed this Section 2254 petition seeking

to attack a conviction obtained in 1999.  Petitioner was sentenced to life in prison for a first

degree murder conviction and then a consecutive term of 10 to 20 years for robbery.   Petitioner

filed no direct appeal and so his conviction became final roughly around September 2, 1999, 30

days after his post sentence motions were denied by the trial court.  Petitioner did not file a

PCRA petition until nearly two full years later, i.e., on September 1, 2001, which was found by

the State Courts to be time barred.   Petitioner's PCRA proceedings concluded on May 17, 2006,

when the Pennsylvania Supreme Court denied his petition for allowance of appeal (PAA).

Petitioner did not file the current habeas petition in this court until at the earliest October 26,

2006, the date whereon he signed his memorandum in support of his habeas corpus petition.

Because his petition is time barred, it should be dismissed.  In the alternative, Petitioner's claims

that he now raises herein were raised in the PCRA petition process and because the State courts held the PCRA petition to be untimely filed, he has procedurally defaulted all of his claims.

### *Relevant Facts and Procedural History*

On March 26, 1999, following a jury trial in the Court of Common Pleas of Beaver County, Petitioner was convicted of First Degree Murder, Conspiracy to Commit Murder and Robbery. After the jury returned a verdict of life imprisonment, on April 7, 1999, Petitioner received a sentence of life imprisonment for the First Degree Murder conviction plus a consecutive sentence of from ten (10) to twenty (20) years for his Robbery conviction. During the trial, Petitioner was represented by privately retained counsel, William A. Jones, Jr. On May 5, 1999, Attorney Jones filed an Omnibus Post Sentence motion, raising various claims. On August 2, 1999, the post sentence motions were denied in total for counsel's failure to file a brief and appear at oral argument. Nor did counsel file a motion to withdraw, nor did he file a notice of appeal to the Superior Court from the trial court's denial of the post trial motions.

Apparently nothing more occurred and Petitioner did nothing more until more than two years later when, on September 1, 2001,[1] Petitioner filed a pro se petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §§ 9541-9546. On September 12, 2001, in accordance with Pennsylvania law, attorney Dennis M. DiMartini was appointed to represent petitioner in his PCRA proceeding. After requesting several continuances

---

[1]  Petitioner asserts that he filed his pro se PCRA petition on September 1, 2001. Dkt. [2] at 6. The Court takes judicial notice of the dockets of the Court of Common Pleas of Beaver County which show on page 23 of 32 that a PCRA petition was filed on September 10, 2001 in that Court. Those dockets are available at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=5639197&arch=0&ST=1/15/2008%204:36:20%20PM

The court will accept the date of filing as September 1, 2001, the date which Petitioner asserts.

to file an amended PCRA petition, Attorney DiMartini filed, on July 10, 2003, a motion for leave to withdraw as counsel. On July 16, 2003, the Court denied the motion to withdraw. However, apparently on February 5, 2004, Attorney DiMartini filed another motion to withdraw which was granted.[2] On that same date, Attorney Gerald Benyo was appointed to represent Petitioner in the PCRA proceedings.

Meanwhile, on October 23, 2003, Petitioner filed his first federal Petition for Writ of Habeas Corpus in which he raised numerous claims of ineffective assistance of counsel. Perry v. Diguglielmo, No. 03-1798 (W.D. Pa.). In addition, Petitioner claimed that the inexcusable and inordinate delay of his state post-conviction proceeding had denied him due process and equal protection.

The undersigned issued a report that recommended the petition be denied without prejudice for failure to exhaust because Petitioner, at the time, had a presently pending PCRA petition which could have potentially resulted in the restoration of his direct appeal rights nunc pro tunc and which then could have reset the clock for when his conviction became final and hence, potentially affected the calculation of AEDPA's statute of limitations. Perry v. Diguglielmo, No. 03-1798 (W.D. Pa. at Dkt. [9]) (R&R docketed 3/10/04). In fact, the Respondents, represented by the same counsel who now represents Respondents in the case at bar, stated to the court that "through the pending PCRA, Perry may request the PCRA court to allow him to file his direct appeal, nunc pro tunc to the Superior Court. The Commonwealth will join in this request." Perry v. Diguglielmo, No. 03-1798 (W.D. Pa. Dkt. [6] at 10 to 11). The

---

[2] The Court takes judicial notice of the dockets of the Court of Common Pleas of Beaver County which show on page 25 of 32 that a motion to withdraw was granted on February 5, 2004 and which show on page 26 of 32 that on the dame date, Attorney Gerald Benyo was appointed to represent Petitioner in the PCRA proceedings.

District Court adopted the report and dismissed the petition without prejudice for failure to exhaust. Id. at Dkt. [10] (filed 3/30/04).

Back in the State Court PCRA proceedings, on November 10, 2004, Attorney Benyo filed a motion for leave to withdraw his appearance, apparently because Petitioner had wanted to proceed pro se. Dkt. [13-2] at 19. The PCRA Court denied the motion in part. The PCRA Court permitted Petitioner to proceed pro se in conducting the PCRA proceedings but ordered that Attorney Benyo serve as stand-by counsel. Id. On December 2, 2004, the PCRA court conducted an evidentiary hearing, where Petitioner represented himself and presented the testimony of Attorney William A. Jones, Jr., his trial and post-sentence counsel, as well as the testimony of Ms. Beatrice Perry, Petitioner's mother.

During the hearing, Attorney Jones testified that after he had filed the post sentence motions but before a hearing was held on them, Petitioner had fired Attorney Jones and requested that Attorney Jones give to Petitioner his case file and that Attorney Jones complied with the request for Petitioner's case file. Dkt. Nos. [13-2] at 49; [13-3] at 1.

The PCRA trial court denied relief by memorandum opinion and order, dated December 7, 2004. Dkt. [13-7] at 28 to 31. The PCRA court denied relief on two bases. First, the PCRA court found that Petitioner did not meet his evidentiary burden under the PCRA statute to show entitlement to relief. Specifically, the PCRA court found credible the testimony of Attorney William Jones that during the pendency of the post trial motions, Petitioner fired Attorney Jones from further representing Petitioner. Dkt. [13-7] at 29. In the alternative, the PCRA court found that the PCRA petition was untimely filed. Dkt. [13-7] at 30.

Petitioner then filed a pro se notice of appeal in the Superior Court. He also filed a pro se appellate brief in the Superior Court. Dkt. Nos. [13-4] at 15 to 46; [13-5] at 1 to 41; Dkt. [13-6]

at 1 to 39. In that appellate brief, Petitioner raised the very same issues he raises in the instant habeas case. Compare Dkt. [13-4] at 16 (statement of questions presented to the Superior Court in the appellate brief) with Dkt. [2] at 2 to 3 (Statement of Questions that are Presented in the brief in support of the habeas petition). By memorandum opinion dated October 28, 2005, the Superior Court refused to address these issues on the merits, instead, finding that the PCRA petition was time barred and, accordingly, affirming the PCRA court on that ground. Dkt. [13-9] at 27 to 31.[3] See Appendix A, Superior Court slip op., at 5 to 6.

Petitioner then filed a PAA, Dkt. [13-8] at 1 to 41; Dkt. [13-9] at 1 to 30, to the Pennsylvania Supreme Court, which was denied on May 17, 2006. Dkt. [13-9] at 31.

Five months later, Petitioner executed the memorandum of law in support of his habeas petition on October 26, 2006. Dkt. [2] at 1. His actual habeas petition, Dkt. [1], was not executed until November 6, 2006. The habeas petition refers the reader to the memorandum of law in support for the issues he raises.

The issues that Petitioner raises in these proceedings are as follows:

1. Trial [and] Appellate counsel was ineffective for (1) failing to file a memorandum of law supporting Petitioner['] s post sentence motions by July 23, 1999, and appearing for argument orally thereon as directed by the trial court; and (2) for abandoning Petitioner without leave of Court or Notice of Withdrawal being provided or filing [a] timely notice of appeal of Petitioner's claims.
2. Trial counsel was ineffective for the following reasons: (1) Relying on the Commonwealth['] s investigation of the case as the basis of the defense case (2) Failing to effectively cross examine the state wittneses [sic], Markus Parham, Marlo Cleckley and Tricia Cleckley (3) Failing to call Marlo Cleckley as a defense witness and (4) Impermissibly eliciting prejudicial testimony from state witness, Gregory Snedexer, during cross examination.
3. Trial counsel was ineffective for failing to object to; (1) the prosecutor[']s prejudicial leading questions to wittness [sic], Markus Parham on direct; (2) The

---

[3] Because the copy of the Superior Court opinion filed by the Respondents is missing every other page, the Court contacted the Superior Court's Prothonotary to obtain a copy of the complete opinion. The complete opinion is attached hereto as Appendix A.

prosecutor's use of hearsay testimony from Mr. Parham on direct; (3) Prosecutor[']s improper use of prior consistent statements of Mr. Parham on direct which were irrelevant and prejudicial; (4) The unidentified and prejudicial reference by Mr. Parham and [the] prosecutor to "he" and "his' during direct examination; and (5) The prosecutor[']s use of hearsay testimony by Shelia Cooper, Mr. Parham's aunt and her characterization of Parham's account as truth.

4. Trial counsel was ineffective for failing to call, Robert Gibbons as [a] defense wittness [sic]

5. Trial counsel was ineffective for (1) calling Anwar Hasan, as a defense witness; and (2) thereafter engaging in a closing argument ridiculing his testimony before the jury and referencing to it as "real convenient" (i.e., unbelievable).

6. Trial counsel was ineffective for (1) Failing to object to certain improper and highly prejudicial remarks by the prosecution during its closing argument; and (2) Failing to object to the court[']s chosen jury charge that was favorable to the Commonwealth and prejudicial to [the] defense to the denial of a fair trial.

7. Trial prosecutor committed misconduct by engaging in a closing argument that (1) convoluted the facts; and (2) misstated the testimony and evidence in the case to the point of a denial of a fair trial.

Dkt. [2] at 2 to 3.

The Respondents filed an answer, Dkt. [13], along with exhibits. In that answer, the Respondents raised, inter alia, the defense of AEDPA's statute of limitations. However, the answer was not accompanied by a certificate of service, indicating that the answer and its exhibits were served upon Petitioner. Petitioner indicated to the court that he never received the answer. Dkt. [16] at 1. In light of the foregoing, the Court ordered Respondents to serve the answer along with its exhibits on the Petitioner and to file with the court a certificate of service, verifying that such was done. Dkt. [18]. The Respondents did so. Dkt. [20]. In that same order directing the Respondents to file a certificate of service, the Court also ordered that Petitioner, if he so desired, had 14 days after service of the answer in which to file a traverse. Petitioner did so. Dkt. Nos. [22] to [26].

### *Applicable Legal Standards*

#### **AEDPA applies**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because Petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) ("Since Werts filed his habeas petition on March 18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards set forth in the AEDPA to his claim for federal habeas corpus relief.") (footnote omitted).

Prior to considering the merits of the habeas petition, a federal court must be satisfied that the procedural requirements for the consideration of a habeas petition have been satisfied. Although exhaustion of state remedies is generally required before a federal court can grant relief, exhaustion is not required if the habeas court denies relief. 28 U.S.C. § 2254(b)(2). In light of the recommended disposition, the court will not further address the issue of exhaustion.

### AEDPA's Statute of Limitations

Generally AEDPA requires that state prisoners file their federal habeas petition within one year of any of four enumerated events:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Although a habeas respondent has the burden of affirmatively pleading AEDPA's statute of limitations, Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002), it is appropriate, where, as here, the habeas petitioner has been put on notice of a statute of limitations issue, to place some burden on the habeas petitioner to show why some date other than the date of the conviction becoming final should be used to calculate the running of the statute of limitations. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), abrogation on other grounds recognized in, Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007); Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); Robinson v. Johnson, 313 F.3d 128, 134-135 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

It is appropriate to place at least some burden of pleading and production on a habeas petitioner to show that the date for the running of the AEDPA limitations period should start from either the date a State created impediment was removed (28 U.S.C. § 2244(d)(1)(B)) or start from the date on which a factual predicate could first have been discovered (28 U.S.C. § 2244(d)(1)(D)). See Jackson v. Secretary for Dept. of Corrections, 292 F.3d at 1349 ("Because Jackson did not assert that a government-created impediment to his filing existed, that he based

his claims on a right newly recognized by the Supreme Court, or that the facts supporting his claims could not have been discovered through due diligence before the filing of this petition, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final."). This is so because it would seem that such information is more peculiarly within the party asserting/arguing the existence of such impediment and/or factual predicate, i.e., the habeas petitioner. Cf. Gomez v. Toledo, 446 U.S. 635, 640-41 (1980)("Our conclusion as to the allocation of the burden of pleading is supported by the nature of the qualified immunity defense. As our decisions make clear, whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant."); Compagnie Des Bauxites De Guinee v. Insurance Co. of North America, 721 F.2d 109, 116 (3d Cir. 1983)("Indeed, allocating the burden of persuasion to the insured is consistent with the well established rule that where the facts lie peculiarly within the knowledge of one party, that party should bear the risk of non-persuasion. Any other rule would be particularly onerous to a party lacking information but required to prove a negative."). In addition, it would be more peculiarly in the knowledge of a habeas petitioner if he is asserting/arguing that his habeas petition relies upon a newly recognized constitutional right made retroactive by the Supreme Court. Thus, once a habeas petitioner has been put on notice of the affirmative defense of AEDPA's statute of limitations, the petitioner bears the burden of pointing to some evidence or reason why the date for the start of AEDPA's limitations period is other than the date the conviction became final or producing some evidence or reason why the statute of limitations has not run.

The Court of Appeals for the Second Circuit has explained the importance of AEDPA's statute of limitations. Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000). In Acosta, the Court of Appeals declared that

The statute of limitation in Section 2244(d) "was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions." <u>Walker v. Artuz</u>, 208 F.3d 357, 361 (2d Cir.2000); <u>cf.</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 322 (1995) (stating that on collateral review, courts should "accommodate [ ] ... the systemic interests in finality ... and conservation of judicial resources"). The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society[.]

<u>Acosta v. Artuz</u>, 221 F.3d at 123. <u>Accord</u> <u>Hill v. Braxton</u>, 277 F.3d 701, 706 (4th Cir. 2002) ("The one-year limitations period ... promotes judicial efficiency and conservation of judicial resources safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.")(internal citations omitted).

*Discussion*

Having been put on notice of AEDPA's statute of limitations defense raised in the Commonwealth's answer, Petitioner did not appear to raise in his traverse any argument that the start date of AEDPA's statute of limitations should be other than the date on which his conviction became final.[4] Because Petitioner does not invoke any of these other dates as the

---

[4] In his traverse, Petitioner does casually mention, without further elaboration, that "[t]he PCRA court's denial of relief constitutes an improper obstruction of the reinstatement of Appellant's right to direct-appeal post-sentence /post-verdict motion claims <u>nunc pro tunc</u> and is an exception to any resulting time-bar therefore." Dkt. [22] at 21. To the extent that Petitioner intends by this sentence to invoke 28 U.S.C. § 2244(d)(1)(B), this court concludes that the PCRA court's denial of relief based on its credibility determination regarding Attorney Jones's firing and on its determination that the PCRA petition was untimely, cannot, as a matter of law, constitute "an impediment to filing an application [for federal habeas corpus] created by State action in violation of the Constitution or laws of the United States." The mere fact that the PCRA court found against Petitioner does not mean that it impeded Petitioner from filing a timely federal habeas petition. Petitioner's failure to convince the PCRA of the merits of his position and his failure to timely file his PCRA petition are what caused his inability to

starting point for the running of AEDPA's statute of limitations, the court will calculate the starting point of AEDPA's statute of limitations from the date his conviction became final as urged by the Commonwealth. The Commonwealth contends that Petitioner's instant petition is untimely because it was not filed within one year of his conviction becoming final. This court agrees.

Petitioner's conviction became final 30 days after August 2, 1999, the date whereon the trial court denied Petitioner's post trial motions and no appeal was filed from that order. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001)("Nara pled guilty on June 20, 1984 and was sentenced on July 13, 1984. Nara did not file a direct appeal, so his conviction and sentence were 'final' on August 13, 1984, when the time during which he could have appealed (30 days) lapsed."), abrogation on other grounds recognized in, Brooks v. Walls, 301 F.3d 839, 841 (7th Cir. 2002); Commonwealth v. Wolf, 632 A.2d 864, 866 n.4 (Pa. 1993) ("We recognize that a conviction, while generally finalized through imposition of a judgment of sentence, is also, as a practical matter, not final until appeals have been exhausted or the time for appeal has expired."). Hence, Petitioner's conviction became final on September 2, 1999. Accordingly, Petitioner had one year from September 2, 1999 in which to file his habeas petition.

While it is true that a properly filed PCRA petition tolls the running of AEDPA's statute of limitations, the PCRA petition must be filed before the limitations period runs out, otherwise there is nothing left to be tolled. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) ("'properly filed' state-court [post-conviction] petitions must be 'pending' in order to toll the

_____

obtain a reinstatement of his direct appeal rights nunc pro tunc in the state courts (where such reinstatement of the direct appeal might have reset the federal statute of limitations period based upon his conviction becoming final in the state courts at a later time, see Frazier v. Stickman, 389 F.Supp.2d 623, 627 n.6 (E.D.Pa. 2005); Ayres v. Stowitzky, 2007 WL 1366886 (E.D.Pa. May 7, 2007)) and hence, ultimately, what caused him to fail to timely file a federal habeas petition.

limitations period. Thus, a state court petition like Tinker's that is filed following the expiration

of the federal [AEDPA] limitations period cannot toll that period because there is no period

remaining to be tolled.")(some internal quotations omitted), <u>reh'g and reh'g en banc denied</u>, 273

F.3d 1123 (11th Cir. 2001). Here, AEDPA's statute of limitations had run on September 2, 2000,

almost one full year to the date before Petitioner filed his PCRA petition, which was on

September 1, 2001. Hence, the PCRA petition could not have tolled the running of AEDPA's

limitations period as there was nothing left of the one year statute to be tolled.

The only argument Petitioner mounts is that he is entitled to equitable tolling of

AEDPA's statute of limitations. Petitioner argues that he is entitled to equitable tolling "because

Petitioner had <u>no</u> knowledge at the time that his trial/appellate counsel had abandoned him until

approximately three (3) weeks prior to the petitioner getting another inmate to prepare the post

conviction relief act (PCRA) petition that was filed on or about September 10, 2001. Therefore,

in light of the exceptional circumstances of trial/appellate counsel's abandonment and the

Commonwealth's withdrawal of their commitment to 'join' petitioner[']s request to the PCRA

court to allow him to file his direct appeal, nun pro tunc to the Pennsylvania Superior Court, as

proclaimed in Petitioner's federal proceedings . . . Petitioner argues that the time period should

be equitably tolled." Dkt. [2] at 11 to 12.

The court notes that the common-law doctrine of equitable tolling can apply to AEDPA's

statute of limitations. <u>Miller v. New Jersey State Dept. of Corrections</u>, 145 F.3d 616 (3d Cir.

1998). However, the court cautioned in <u>Miller</u> about the limited nature of equitable tolling:

> equitable tolling is proper only when the "principles of equity would make [the]
> rigid application [of a limitation period] unfair." <u>Shendock</u>, 893 F.2d at 1462.
> Generally, this will occur when the petitioner has "in some extraordinary way ...
> been prevented from asserting his or her rights." <u>Oshiver</u>, 38 F.3d 1380. The
> petitioner must show that he or she "exercised reasonable diligence in
> investigating and bringing [the] claims." <u>New Castle County</u>, 111 F.3d at 1126.

> Mere excusable neglect is not sufficient.  See Irwin v. Department of Veterans
> Affairs, 498 U.S. 89, 96 (1990);  New Castle County, 111 F.3d at 1126.

Id. at 618-19. Put succinctly, a habeas petitioner seeking to invoke the doctrine of equitable

tolling must establish "extraordinary circumstances." Sandvik v. United States, 177 F.3d 1269,

1271 (11th Cir. 1999)("Equitable tolling is appropriate when a movant untimely files because of

extraordinary circumstances that are both beyond his control and unavoidable even with

diligence."), reh'g and suggestion for reh'g en banc denied, 207 F3d 666 (11th Cir. 2000).  In

order "[t]o establish the extraordinary circumstances necessary to equitably toll the AEDPA's

statute of limitations, a habeas petitioner must prove that the cause of his delay was both beyond

his control and unavoidable even with diligence."  Simmons v. Yukins, No. Civ. 01-CV-71287-

DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001).  See also  Pace v. DiGuglielmo, 544

U.S. 408, 418 (2005)("Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way.").  Moreover, "the party seeking equitable tolling

must have acted with reasonable diligence throughout the period he seeks to toll." Warren v.

Garvin, 219 F.3d 111, 113 (2d Cir. 2000)(quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.

2000)).  Lastly,  it is petitioner's burden to plead and prove entitlement to equitable tolling.  See,

e.g., Polk v. Cain, No. Civ. A. 00-3026, 2001 WL 736755, *9 (E.D. La. June 23, 2001)("A

person seeking the tolling of the statute of limitations period has the burden of showing

circumstances exist that justify tolling.");  Balagula v. United States, 73 F.Supp.2d 287, 291

(E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable

tolling.");  Turner v. Singletary, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon

the petitioner to show that equitable tolling is warranted.").

The record does not support the existence of such extraordinary circumstances in this case so as to merit applying the doctrine of equitable tolling herein.

Petitioner offers two excuses for his not filing the petition on time and contends that these two excuses constitute extraordinary circumstances. First, he claims that he did not know until "three (3) weeks prior to Petitioner getting another inmate to prepare the post conviction relief act (PCRA) petition that was filed in the Court of Common Pleas on or about September 10, 2001," Dkt. [23] at 37, that his trial counsel, Attorney Jones had abandoned him without notice. The court takes this to mean that Petitioner did not learn until three weeks prior to September 10, 2001, i.e., sometime in August 2001, that Attorney Jones had failed in August-September 1999 to file an appeal and/or failed to appear for argument on the post sentence motions. Because Petitioner seeks to have the AEDPA statute of limitations equitably tolled from the time he allegedly was abandoned by Attorney Jones, he would have to show that he acted with diligence throughout the period from August-September 1999 and thereafter.

There are at least two problems with Petitioner's first argument. First, it depends on a factual assertion that Petitioner did not know that Attorney Jones had allegedly abandoned him and was not going to act on his behalf to advance Petitioner's case any further. This factual assertion is directly contradicted by the credibility determination and finding of fact made by the PCRA Court after it conducted an evidentiary hearing on the claim that Attorney Jones was ineffective for abandoning Petitioner. The PCRA court found as follows:

> The burden of proving eligibility for relief under the provisions of the Post Conviction Relief Act is upon the petitioner, and that burden is only met if the Court finds a preponderance of the evidence. In the case at hand, defendant/petitioner's evidence quite simply does not meet the required threshold and must be denied. Attorney Jones testified that defendant/petitioner discharged him between the time of filing a Post Sentence Motion and the time of hearing or argument on the Motion; he did, at defendant/petitioner's request, return his file to defendant/petitioner, and he did not at any time, receive directions from

14

defendant/petitioner to (1) argue the Post Sentence Motion; (2) seek appointment of new counsel by the Court to assist defendant/petitioner on the Motion or to perfect a direct appeal to the Superior Court of Pennsylvania, or (3) file the required direct appeal.  The testimony of defendant/petitioner's mother did not convince this court by a preponderance of the evidence that the testimony of Attorney Jones was, in any way, inaccurate on those important issues.

For these reasons, the relief requested by defendant/petitioner must be denied.

Dkt. [13-7] at 29 to 30.   Thus, the PCRA court found as a fact that Petitioner terminated

Attorney Jones from representing Petitioner and that Attorney Jones returned the case file to

Petitioner as instructed.  Petitioner's argument for equitable tolling requires this Court to accept

as a fact that Petitioner did not fire Attorney Jones and to accept as a fact that Petitioner had no

knowledge that Attorney Jones would not act on Petitioner's case to further it.  This is directly

contrary to the findings of fact and credibility determinations made by the PCRA court.  Such

findings of fact are entitled to a presumption of correctness, which this court may reject only if

Petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner has not pointed to any evidence that rebuts this presumption in the least, yet alone by

clear and convincing evidence.[5]  Hence, this Court is justified in finding that Petitioner did know

---

[5]   The best that Petitioner can come up with is "[t]he Appellant [i.e., Petitioner] asserts the contrary [i.e., asserts that Petitioner did not fire Attorney Jones].  There were differences of opinion between counsel and appellant regarding some issues back then that appellant thought should have been raised in the post-sentence motions.  But counsel was neither fired nor asked to leave." Dkt. [22] at 15 footnote *.  These contentions simply are insufficient to rebut the PCRA court's credibility determination and its finding that Petitioner did, in fact, fire Attorney Jones.

Neither does the fact that Attorney Jones failed to file a formal petition to withdraw with the PCRA court mean that AEDPA's statute of limitations should be tolled as Petitioner appears to argue. See Dkt. [22] at 16.  The question for equitable tolling is whether Petitioner was prevented in some extraordinary way from filing and whether he acted with diligence.  Here, because we know from the PCRA court's uncontradicted finding that Petitioner fired his attorney and that Attorney Jones returned Petitioner's file, Petitioner should have known that Attorney Jones could not have pursued his case further.  That Petitioner did nothing for over two years after the firing, establishes that Petitioner did not act with the requisite diligence throughout the time he seeks to have equitably tolled.

Contrary to Petitioner's contention, it was not Attorney Jones's alleged ineffectiveness for failing to file a formal petition of withdrawal that denied Petitioner his right to appeal, it was Petitioner's firing of Attorney Jones and demanding his case file back, and Petitioner's failure to take any other actions

in August-September 1999 that Attorney Jones would not be doing anything to move Petitioner's case forward because Petitioner had fired Attorney Jones. Thus, the factual premise of Petitioner's first excuse is simply not tenable in the face of this record. For this reason alone, the first excuse must fail.

Even if however, contrary to the PCRA Court's factual determination, this court could accept that Petitioner did not know in August-September 1999 that Attorney Jones had "abandoned" Petitioner, still this would not merit equitable tolling because there is a second problem with Petitioner's first excuse.

As noted above, to show entitlement to equitable tolling, Petitioner must demonstrate that he acted with reasonable diligence throughout the time he seeks to have tolled. Warren v. Garvin, 219 F.3d at 113. Here, that time period would include from August-September 1999 up to, at least, September 2001, when the PCRA petition was filed. The second problem with Petitioner's argument that he only learned sometime in roughly August of 2001 that Attorney Jones abandoned him is that the argument does nothing to show that he acted with reasonable diligence during the time from August-September 1999 until September 2001. First, Petitioner does not explain how he learned of the alleged fact that Attorney Jones had "abandoned" him. This is a glaring omission, especially if he discovered such by making an inquiry, as he fails to explain why he did not earlier make such an inquiry. Nor, does Petitioner explain why he waited for nearly two years to make any inquiries about the status of his case. These failures of explanation are simply insufficient to carry Petitioner's burden to show entitlement to any equitable tolling. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753 (1991)("[a]ttorney

---

after the firing to assure his case was pursued that, in fact, caused Petitioner's right to appeal his case to be lost.

ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"); Harrison v. General Motors Corp., 275 F.3d 47 (5th Cir. 2001)(Table, unpublished), 2001 WL 1268765, *1 ("Harrison 'cannot rely upon *any* failure on the part of [her] chosen attorney as diligence or an excuse for lack of diligence, because the acts of one's attorney [are] imputed to the client.'").

The second excuse Petitioner offers is really no excuse at all. He says that the Respondents failure to join with him in asking the PCRA court to reinstate his direct appellate rights nunc pro tunc constitute an extraordinary circumstance so as to qualify him for equitable tolling. Such **might** help to explain why the statute of limitations should be tolled after January 21, 2004, because this is the date whereon the first answer was signed by the Respondents in Petitioner's first habeas petition proceedings and it was in the answer that the Respondents made such a statement. Such might justify equitable tolling from January 21, 2004 and thereafter, to the extent that Petitioner could contend that he detrimentally relied upon the representation, but it fails to show entitlement to any tolling prior to that time. We must not forget that long before January 21, 2004, the AEDPA statute of limitations had run.

Perhaps Petitioner is arguing that if the Respondents had made such a request of the PCRA court, then Petitioner's direct appeal rights would have been reinstated nunc pro tunc, and the date when his conviction became final could have been reset. This argument is too speculative so as to justify equitable tolling. First, even if the Respondents had joined in the request, it is doubtful, at best, that the PCRA court would have granted such request. This is because the PCRA statute of limitations is a matter of the court's jurisdiction under Pennsylvania law. Commonwealth v. Abu-Jamal, 833 A.2d 719, 737 (Pa. 2003) Because parties cannot

confer jurisdiction on a tribunal by consent,[6] even if the Respondents had conceded that Attorney Jones was ineffective in failing to file a direct appeal and Petitioner's direct appeal rights should be reinstated nunc pro tunc, the PCRA court would probably still have had to conduct a hearing on the claim of Attorney Jones' ineffectiveness so as to determine whether the PCRA statute of limitations should have been statutorily tolled due to such ineffectiveness, thereby rendering the PCRA petition timely and therefore, rendering the PCRA court's exercise of jurisdiction appropriate. No doubt had such a hearing occurred, the same result would have obtained as was obtained in the PCRA hearing that was actually held, i.e., a finding that Petitioner fired Attorney Jones and therefore, no tolling was appropriate and hence, the court lacked jurisdiction because the PCRA petition was untimely. In any event, Petitioner's second excuse simply is insufficient to establish that he was prevented in some extraordinary way from filing his habeas petition in a timely manner.

Accordingly, Petitioner having failed to carry his burden to show entitlement to equitable tolling, the petition should be dismissed as time barred.

### Procedural Default

In the alternative, even if the petition were not time barred, Petitioner has procedurally defaulted his claims and the petition should be dismissed on the ground of procedural default.

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule

---

[6] Commonwealth v. Saunders, 394 A.2d 522, 524 (Pa. 1978) ("This Court is not free to dispose of any and all issues placed before it by the party litigants. The Supreme Court, like other courts, has only 'such jurisdiction as shall be provided by law,' Pa.Const., art. V, s 2(c). If jurisdiction is not so conferred upon it, this Court 'cannot acquire jurisdiction to entertain an appeal either by the consent of the parties or by our own acquiescence . . . .'"); Commonwealth ex rel. Ransom Township v. Mascheska, 239 A.2d 386, 387 (Pa. 1968)("[p]arties, even by consent, cannot confer jurisdiction where such is in fact lacking.").

and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas).

Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed at the time of the alleged default. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .").

There are two exceptions to the procedural default doctrine. A federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the

habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . .  This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'"  <u>Werts v. Vaughn</u>, 228 F.3d at 193 (citations and some internal quotations omitted).  The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice."  In <u>Werts v. Vaughn</u>, the Court explained this exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

<u>Id</u>.

Even if a respondent in a federal habeas proceeding fails to raise the issue of procedural default, the court may do so sua sponte.  <u>Yeatts v. Angelone</u>, 166 F.3d 255, 261-62 (4th Cir. 1999).  The court notes though that the Respondents herein raised the procedural default defense. Dkt. [13] at 18.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  <u>See</u>, <u>e.g.</u>, <u>Carter v. Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995)(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from

considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998). Even so, here, the Superior Court squarely refused to hear Petitioner's claims on the merits because of the PCRA time bar. Those claims are the very same claims Petitioner raises in the instant habeas petition at bar.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice. See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, *4 (9th Cir. 1999); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, *3 (10th Cir. 1993).

Both the PCRA Court and the Superior Court found that Petitioner's PCRA petition was time barred under Pennsylvania law. Such failure to timely file his PCRA petition constitutes a procedural default. See, e.g., Banks v. Horn, 49 F.Supp.2d 400 (M.D. 1999)(holding that the State Supreme Court's refusal to consider a death sentenced PCRA petitioner's claims because his PCRA petition was untimely constituted a procedural default barring federal habeas review and that the PCRA's statute of limitations and its application by the state Courts was independent and adequate). It appears that as of September 2000, the time when Petitioner committed his procedural default, i.e., when he failed to timely file his PCRA petition, the state courts regularly and consistently applied the PCRA statute of limitations so as to render it an "adequate" state law ground. See Catanch v. Larkins, No. 98-85, 1999 WL 529036 (E.D. Pa. July 23, 1999)(holding certain claims which were not otherwise exhausted had been procedurally defaulted because the

claims could not be brought under a second PCRA petition as that petition would be time barred and that the State courts apply the PCRA statute of limitations consistently, thus rendering it an adequate and independent state law ground); Holland v. Horn, 150 F.Supp.2d 706 (E.D. Pa. 2001); Commonwealth v. Barrett, 761 A.2d 145 (Pa.. Super. 2000)(applying the PCRA time bar to a PCRA petition filed July 1998). Moreover, notwithstanding the fact that the Respondents invoked the procedural default defense, Petitioner failed to allege, as is his burden,[7] either cause or prejudice for the procedural default, i.e., for failing to bring a timely PCRA petition. In addition, Petitioner fails to allege a miscarriage of justice as is his burden in order to overcome the procedural default. See, e.g., Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, *4 (6th Cir. 1998)("Therefore, the burden is on the defendant at this stage to make "a colorable showing of factual innocence" in order to be entitled to the "fundamental miscarriage of justice" exception"). Petitioner does not now appear to claim before this court that he is "actually innocent" of the crimes and indeed on this record could not do so. Accordingly, Petitioner has procedurally defaulted his claims.

### Certificate of Appealability

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders regarding habeas petitions. Section 2253 essentially provides in relevant part that a certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be

---

[7] See Songer v. Wainwright, 733 F.2d 788, 792 (11th Cir. 1984)("The district court properly held that because defendant **alleged** neither cause nor prejudice, he is now barred from raising these claims.) (emphasis added), reh'g en banc granted and opinion vacated by, 758 F.2d 552 (11th Cir. 1985), opinion reinstated by, 769 F.2d 1497 (11th Cir. 1985); Elrich v. McCullion, 861 F.2d 720 (Table), 1988 WL 119461, at *1 (6th Cir. 1988)("petitioner was required to allege cause and prejudice to excuse his procedural default. See Engle v. Isaac, 456 U.S. 107 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977). Because petitioner has failed to allege cause and prejudice, the district court was precluded from reviewing his claims."); Simpson v. Jones, 238 F.3d 399 (6th Cir. 2000).

issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (C)(2). Instantly, this court concluded that Petitioner's habeas petition was time barred and/or procedurally defaulted.

There is difficulty in applying Section 2253(C)(2) when a District Court does not decide the case on the merits, i.e., declines to address questions of constitutional violations, but instead decides the case on a procedural ground without determining whether there has been a denial of a constitutional right. See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

In resolving this difficulty, the Supreme Court in Slack v. McDaniel, held that

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. at 484. Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 473. The test is conjunctive and both prongs must be met. See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the Petitioner's claims for failing to comply with AEDPA's statute of limitations and/or that he procedurally defaulted his claims was correct. Accordingly, a certificate of appealability should be denied.

CONCLUSION

23

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge


Dated: 31 January, 2008

cc:     The Honorable Gary L. Lancaster
        United States District Judge

        Jamar B. Perry
        DQ-4432
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426-0244

        All Counsel of record via CM-ECF